Case 4:20-cv-00689   Document 48   Filed on 08/13/21 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
August 13, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAMON MEJIA, JOSE RAMIREZ, ARLENDA GODOY, VICTOR LOVO, AND NAHUN ROJAS, on behalf of themselves and all others similarly situated, | § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No.: 4:20-CV-00689 |
| TEXAS LEGACY CONTRACTING LLC, TILMAN JOHN CHAMBERS, III, and WILSON OMAR MARTINEZ, | § § § § § | |
| *Defendants*. | § | |

## **MEMORANDUM & ORDER**

This matter is before the Court on Defendants Texas Legacy Contracting, LLC's ("Legacy") and Tilman John Chambers, III's ("Chambers") Motion for Summary Judgment. ECF No. 30. On August 5, 2021 the Court held a hearing and heard argument from Legacy, Chambers, and the named Plaintiffs regarding the Motion for Summary Judgment and Plaintiffs' Motion for Leave to File Plaintiffs' First Amended Complaint. On August 6, 2021, the Court granted Plaintiffs' Motion for Leave to Amend and Plaintiffs' First Amended Complaint is the live pleading in the case. *See* ECF No. 42. Although the First Amended Complaint omits claims for violations of the Fair Labor Standard Acts ("FLSA") and Texas Minimum Wage Act ("TMWA") as to Legacy and Chambers,[1] the Court dismissed *with prejudice* the FLSA and TMWA claims

---

[1] The named Plaintiffs continue to assert claims under the FLSA and TMWA against Defendant Martinez. Martinez has been served but has not appeared in the case nor filed a motion for summary judgment. Therefore, this Order does not dispose of any claims asserted against Martinez in the First Amended Complaint.

1

previously alleged against them by the named Plaintiffs. With respect to the FLSA and TMWA collective action claims alleged on behalf of unnamed class members, the Court dismissed those *without prejudice* as no class was ever certified. *See* ECF No. 41. As a result of these rulings, Plaintiff Mejia's ("Mejia") breach of contract claim against Defendants Legacy and Chambers[2] is the lone remaining claim on which Defendants Legacy and Chambers have moved for Summary Judgment. Having considered the parties' filings, the arguments at the hearing, and the law, the Court **DENIES** Defendants' Motion for Summary Judgment.

I.  **Background Information and Undisputed Facts**

Defendant Chambers owned and operated Legacy, a construction and remodeling business. ECF No. 42 ¶¶ 11-14. Legacy hired Omar Martinez d/b/a M3 Roofing & Restoration ("Martinez") as a subcontractor to furnish bricklayers on a post-Hurricane Harvey reconstruction project at the Rollingwood Apartments ("Rollingwood Project"). ECF No. 30 at 5. Martinez, in turn, hired Mejia and other individual laborers to work on the Rollingwood Project. ECF No. 42 ¶¶ 16-18. Martinez provided checks for the work performed by the laborers to Mejia who subsequently distributed them to the individual bricklayers working at the Rollingwood Project. *Id*. ¶ 18. Mejia contends that on or about September 17, 2018, Martinez provided checks to Mejia for work performed, all of which were rejected due to insufficient funds. *Id*. ¶ 22. Legacy terminated Martinez from the Rollingwood Project around October 12, 2018. *Id*. ¶ 25. Mejia claims that after terminating Martinez as the subcontractor, Legacy orally promised Mejia that, in exchange for the laborers continuing to work on the Rollingwood Project, Legacy would pay the laborers the same price Martinez had been paying them for their work and would pay the remaining amount owed to them by Martinez for already completed work. *Id*. ¶ 26-28. Mejia claims Legacy's promise to

---

[2] The breach of contract claim against Chambers is based on derivative liability only, and is not a direct claim. ECF No. 42 ¶ 46.

pay the amounts owed by Martinez was conditioned on the laborers' continued work on the remaining buildings at the Rollingwood Project. *Id*. ¶ 28. Mejia alleges he accepted the oral contract and the laborers continued to work full-time on the Rollingwood Project until the work was completed, which was from approximately October 12, 2018 through October 31, 2018. *Id*. ¶ 29. Legacy paid the laborers for the work performed from October 12-31, 2018. *Id*. ¶ 30. However, Legacy did not pay the laborers the amounts owed to them for work performed for Martinez prior to Martinez's termination. *Id*. ¶ 30. Mejia now brings a breach of contract claim against Legacy directly and Chambers derivatively for failure to pay the amount owed to the workers by Martinez for prior work. *Id*. ¶¶ 44-46.

For purposes of the summary judgment motion only, the parties do not dispute the following facts. After Martinez was terminated, Chambers (on behalf of Legacy) said to Mejia: "Help me finish. I need to have [the Rollingwood Project] done. I'm going to help you out with what Omar [Martinez] owes you because he left money with me because I did not pay him the total amount. . . . And so help me finish, and from that money I will pay you-all." ECF No. 32-1 at 6 (Mejia Dep. 67:12-19). Mejia also testified that Chambers told him "I did not have to worry, that he was going to take care of me, he was going to buy the rest of the material, we could finish the buildings, and work and in that way he would be able to pay me[;]" and "Do not worry, the full amount had not been paid yet to Omar. So help me finish the buildings, and I will pay you-all from that money." *Id*. at 8-9 (Mejia Dep. 159:15-18 and 159:25-160:2). When Mejia and the laborers finished the Rollingwood Project, Mejia inquired whether Legacy/Chambers "was going to help us out, if he was going to pay us the money that Omar owed us. But he said he could not because the money that Omar had left behind had been used to pay the electricians and other people that Omar had left hanging and that it was not enough money for us." *Id*. at 6-7 (Mejia Dep. 67:24-

3

68:4). Finally, Mejia speaks Spanish and his deposition testimony was obtained using the services of an interpreter.

## II. Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).

The Court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R & L Inv. Prop., L.L.C. v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). In ruling on a motion for summary judgment, the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987).

## III. Analysis

### A. Defendants have met their burden to show the statute of frauds applies.

Defendants argue that, assuming for purposes of summary judgment Mejia has shown Legacy orally agreed to pay the amount already owed by Martinez, the agreement is unenforceable because it falls within the statute of frauds as an oral promise to answer for the debt of another person. ECF No. 30 at 14. As the party asserting the statute of frauds to bar enforcement of an oral agreement, Defendants bear the initial burden of establishing its applicability. *See Dynegy,*

*Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). Whether an oral agreement falls within the statute of frauds is generally a question of law. *Id*. at 642.

Texas law provides that "a promise by one person to answer for the debt, default, or miscarriage of another person" is not enforceable unless the promise or agreement is in writing and signed by the person to be charged with the promise or agreement. TEX. BUS. & COMM. CODE § 26.01(a), (b)(2). Mejia does not dispute that he has no written document signed by Legacy setting forth the alleged oral agreement to pay the debt owed by Martinez in exchange for the laborers' continued work on the Rollingwood Project. Therefore, Defendants have met their burden to establish that the statute of frauds applies to the oral contract alleged by Mejia. *See* TEX. BUS. & COMM. CODE § 26.01(b).

> **B.      Mejia has raised a genuine issue of fact regarding the applicability of an exception which would remove the oral contract from the statute of frauds.**

Because Defendants have met their burden to show the alleged contract falls within the statute of frauds, "the burden shifts to [Mejia] to establish an exception that would take the verbal contract out of the statute of frauds." *Dynegy, Inc.*, 422 S.W.3d at 641. Mejia contends that two exceptions apply to take the oral agreement outside the statute of frauds: the "full performance" exception and the "main purpose" exception. ECF No. 32 at 2-4. Whether an agreement qualifies as an exception that removes it from the statute of frauds is generally a question of fact. *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 158 (Tex. App.—Houston [14th Dist.] 2017, no pet).

> **1.   The full performance exception does not apply.**

The full performance exception to the statute of frauds applies "when one party has fully performed under the contract and the only thing remaining is performance by the other party." *Fuller v. Wholesale Elec. Supply Co. of Hous.*, No. 14-18-00328-CV, 2020 Tex. App. LEXIS

2643, at *15 (Tex. App.—Houston [14th Dist.] Mar. 31, 2020, pet. filed). However, the performance must be "unequivocally referrable" to the oral agreement and must be "corroborative of" the fact that the oral contract was made. *Estate of Stegall*, No. 02-17-00410-CV, 2019 Tex. App. LEXIS 10126, at *33 (Tex. App.—Fort Worth Nov. 21, 2019, no pet.). Because the performance must corroborate the oral agreement, the full performance exception does not apply to remove an oral contract from the statute of frauds when the performance by the party seeking to enforce the oral contract consists of providing services for which he received wages. *See id*., at *34 (holding performance of services for which plaintiff received a salary did not remove oral agreement to employ her for five years as part of the sale of the firm from the statute of frauds); *see also Fuller*, 2020 Tex. App. LEXIS 2643, at *15-16 (holding full performance exception failed to remove oral promise from statute of frauds because there was no meaningful distinction between plaintiff's performance of services for which he was paid, and performance under an alleged oral agreement to receive 2% of company's shares).

Here, it is undisputed that Mejia and the other laborers were paid for the work they performed after Martinez was terminated. ECF No. 30-1 at 74 (Mejia Dep. 64:2-4). Because Mejia has failed to demonstrate any meaningful distinction between performance of services for which he was paid, and performance of services under the alleged oral agreement to pay amounts owed by Martinez, the Court finds the services rendered from October 12-31, 2018 do not provide a basis for removing the alleged oral agreement from the statute of frauds.

> **2. Mejia has raised a genuine issue of fact regarding the main purpose exception**.

The "main purpose" doctrine provides that "'wherever the main purpose and object of the promisor is, not to answer to another, but to subserve some purpose of his own, his promise is not within the statute of frauds, although it may be in form a promise to pay the debt of another." *Cruz*

*v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 827 (Tex. 2012) (quoting *Lemmon v. Box*, 20 Tex. 329, 333 (Tex. 1857)) (internal alterations omitted). Whether the main purpose exception applies to take the alleged oral agreement outside the statute of frauds presents a question of fact. *Duradril, L.L.C.*, 516 S.W.3d at 158.

To remove the alleged oral agreement to pay the debt owed by Martinez from the statute of frauds, Mejia must show that (1) Legacy intended to create primary responsibility in itself to pay the debt; (2) there was consideration for the promise; and (3) the consideration given for the promise was primarily for Legacy's own use and benefit—that is, the benefit Legacy received was its main purpose for making the promise. *See Cruz*, 364 S.W.3d at 828.

Construing the summary judgment evidence in the light most favorable to Mejia and making all reasonable inferences in his favor, the Court finds the summary judgment evidence raises a genuine issue of fact with respect to each of the three elements of the main purpose doctrine. The primary responsibility factor distinguishes between a promise to pay the debt of another and a promise to act as a surety in the event the debtor does not pay. *See Gulf Liquid Fertilizer Co. v. Titus*, 354 S.W.2d 378, 383 (Tex. 1962) ("[T]he courts have denied a recovery as being within the Statue where the promisor has promised to pay the debt of another only as a surety, but hold promises to be enforceable where the promisor has in effect made the debt his own and has assumed primary responsibility."). The promise to act as surety is considered a conditional promise because the obligation arises only if the debt is not paid in the first place. Defendants argued during the hearing that Mejia has failed to demonstrate an unconditional promise to pay Martinez's debt because Legacy promised to pay only from funds that had been allocated for Martinez but were left on hand with Legacy. However, the Court finds Mejia has raised a genuine issue of fact as to whether Legacy intended to create primary responsibility in itself by promising

7

to pay Martinez's debt if the laborers continued working and finished the Rollingwood Project. The fact that Legacy may have limited the amount of its obligation to the funds earmarked for Martinez and remaining on hand does not change the intent to take on a primary obligation to pay as opposed to acting as a surety. It is undisputed that Martinez had already failed to pay the amount owed for work already performed. Viewing the evidence in the light most favorable to Mejia, Legacy's promise constitutes a primary responsibility to pay a portion of the Martinez debt—the amount to be determined by the extent of the remaining funds.[3]

With respect to the second and third elements of the main purpose exception to the statute of frauds, Mejia has presented summary judgment evidence from which a reasonable fact finder could infer the existence of consideration for Legacy's promise to pay Martinez's debt and that the consideration was for Legacy's benefit. Legacy represented to Mejia that if the laborers would "help" Legacy by agreeing to continue working and finish the Rollingwood Project, Legacy would pay them not only for their work, but also for what Martinez owed them. *See* ECF No. 32-1 at 6 (Mejia Dep. 67:12-19) ("*Help me finish. I need to have [the Rollingwood Project] done.* I'm going to help you out with what Omar [Martinez] owes you because he left money with me because I did not pay him the total amount. . . . And so help me finish, and from that money I will pay you-all."); *id*. at 8-9 (Mejia Dep. 159:25-160:2) (testifying Chambers told him "Do not worry, the full amount had not been paid yet to Omar. *So help me finish* the buildings, and I will pay you-all from that money."). A reasonable fact finder could infer that it benefitted Legacy to have the same laborers finish the job and that to induce them to do so when they had no obligation to continue,

---

[3] While Counsel for the Defendants argued that no breach occurred because no funds remained, the summary judgment record does not demonstrate that no funds remained—only that Legacy represented to Mejia that no funds remained.

Legacy promised to pay them what Martinez owed them for work they had already done, at least to the extent of the earmarked funds Legacy still had on hand.

Viewing the summary judgment evidence in the light most favorable to Mejia, a reasonable fact finder could find Legacy promised to pay a portion of Martinez's debt, that the consideration for the promise was Mejia's agreement for the laborers to continue to work on the Rollingwood Project, and that the main purpose of the promise was to procure the labor to complete the Rollingwood Project. ECF No. 32 at 4.

Defendants argue in their reply brief that Mejia's own deposition testimony establishes that Defendants did *not* promise to pay Martinez's debt in whole or in part. ECF No. 33 at 4. Instead, Defendants argue the evidence establishes a promise to pay the laborers only "from that money"—money Legacy had earmarked to pay to Martinez. *Id*. In essence, Defendants argue that the evidence establishes an oral agreement only to pay the laborers for old or new work from the funds that remained in the "bucket" that had been earmarked for Martinez. The Court is not convinced. The laborers had no obligation to continue working or to finish the work for Legacy. Just as Legacy argues it would not make commercial sense for Legacy to effectively pay twice for the work that had been performed, it also does not make commercial sense that the laborers, having no obligation to continue working, would agree to limit their right to payment for old and new work to the funds that had been set aside for Martinez. ECF No. 33 at 4.

In summary, Mejia has met his burden to create a genuine issue of fact on the main purpose exception to the statute of frauds.

## IV. Conclusion

For the reasons discussed above, the Court **ORDERS** that Defendants' Motion for Summary Judgment (ECF No. 30) is **DENIED**.

Signed on August 13, 2021 at Houston, Texas.

                                            Christina A. Bryan
                                            United States Magistrate Judge